**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 13-cv-00434-MSK

**GERALD A. MARQUEZ,**

      Plaintiff,

v.

**CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,**

      Defendant.

**OPINION and ORDER**

**THIS MATTER** comes before the Court on Plaintiff Gregory A. Marquez's appeal of the Commissioner of Social Security's final decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83c. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES**

    **I.**    **Jurisdiction**

Mr. Marquez filed a claim for disability insurance benefits pursuant to Titles II and XVI, asserting that his disability began on September 8, 2007. After his claim was initially denied, Mr. Marquez filed a written request for a hearing before an Administrative Law Judge ("ALJ"). This request was granted and a hearing was held on September 9, 2011.

The ALJ issued a decision which found that Mr. Marquez met the insured status requirements through December 31, 2011. Applying the five-step disability evaluation process,

the Decision also found: at Step 1 that Mr. Marquez had not engaged in substantial gainful activity since September 8, 2007; at Step 2 that he had the following severe impairments: chronic pain, obesity, post-traumatic stress disorder ("PTSD"), borderline personality disorder, depression and anxiety; at Step 3 that he did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, Appx. 1 ("the Listings"); and that Mr. Marquez had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567 and 416.967[1] with the following additional limitations: standing and/or walking no more than 3 hours per day; bending, stooping and squatting no more than 2 hours per day; lifting or carrying 20 pounds no more than 2 hours per day; lifting or carrying 10 pounds no more than four hours per day; and the ability to frequently change positions when sitting. The Decision also found that Mr. Marquez was able to: understand and remember work locations and simple to semi-complex routines; maintain adequate attention and concentration for performing simple to semi-complex routines; sustain a workday or workweek schedule; travel; avoid obvious hazards; respond to simple to semi-complex changes; and occasionally interact with the public, co-workers and supervisors. Given the above RFC, the Decision found at Step 4 that Mr. Marquez could not perform his past work. However, at Step 5 the Decision stated that he was not disabled because he was capable of performing other jobs that existed in the national economy, including call-out operator and document preparer.

The Appeals Council denied Mr. Marquez's request for review. Consequently, the Decision is the Commissioner's final decision. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th

---

[1] All references to the Code of Federal Regulations (C.F.R.) are to the 2012 edition. Hereafter, the Court will only cite the pertinent Title II regulations governing disability insurance benefits, found at 20 C.F.R. Part 404. The corresponding regulations governing supplemental security income under Title XVI, which are substantively the same, are found at 20 C.F.R. Part 416.

Cir. 2011). Mr. Marquez's appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

## II.     Material Facts

The material facts are as follows.

Mr. Marquez was born in 1962 and has a 12th grade education. His past jobs include cook, kitchen supervisor, housekeeping supervisor and construction laborer. He suffers from degenerative disk disease, feet burns, plantar fasciitis, degenerative joint disease in his left ankle, depression, anxiety and PTSD.

Summarized below are notes and reports from treatment providers and examining physicians that address Mr. Marquez's physical impairments. Although other evidence in the record relates to Mr. Marquez's mental impairments, that evidence is not relevant to the issues presented.

### A. Medical Records Initially Submitted to the Commissioner

With his initial disability application, Mr. Marquez submitted medical records documenting his physical impairments from August 2006 to January 2010.

Mr. Marquez's physical complaints largely relate to his lower back, leg and foot pain. His primary treatment provider was Dr. Celada, who saw Mr. Marquez throughout the disability period and consistently prescribed him pain medication, including Neurontin, Cyclobenzaprine, Diclofenac and Oxycodone. His treatment notes reference Mr. Marquez's continual complaints of mild to severe pain, attributing this pain to degenerative disk disease in the lumbar spine and severe burns on his feet.

In August 2006, an x-ray of Mr. Marquez's lower spine showed severe disk degeneration at the L4-L5 and L5-S1 levels, as well as central spinal stenosis and hypertrophic spurring. In

July 2009, Mr. Marquez complained of mild foot pain and plantar fasciitis associated with his foot burns, but was assigned to the MOVE! weight loss program and advised to exercise 6-7 times per week for 10-30 minutes.  A November 2009 MRI showed right-side lateral recess and foraminal stenosis due to disk protrusion at L5-S1, likely right-side S1 nerve root compression and possible L5 nerve root entrapment.

In December 2009, Dr. Celada examined Mr. Marquez and concluded that he had pain, but no clear evidence of radiculopathy.  Additionally, he wrote that he had a "long conversation [with Mr. Marquez and] I explained in detail findings on MRI [do not] necessarily correlate with symptoms and examination.  The need for additional studies (sic), and we agreed on [electromyogram test]."  However, Dr. Celada examined Mr. Marquez in January of 2010 and concluded that his lower back pain was suggestive of radiculopathy.

Mr. Marquez also saw other treatment providers for his low back and foot pain.  In April 2008, Dr. Offut, his treating podiatrist, examined Mr. Marquez and diagnosed him with neuritis, nerve damage trauma and plantar fasciitis in his feet, all of which made walking difficult and required lifelong treatment.  During an August 2009 visit to Ms. Wilson, a nurse practitioner, Mr. Marquez complained of mild low back pain (1 out of 10).  Two months later, Mr. Marquez was examined by Ms. Uran, a nurse, who wrote in treatment notes that he had low back pain exacerbated by rotation, but had a steady gait and good lumbar spine range of motion.  In January 2010, Dr. Stephenson performed a physical examination and electromyogram (EMG) test.  Mr. Marquez had reduced reflexes in his knees and ankles, decreased sensation in his right leg and slight motor strength deficits.  However, the EMG test was essentially normal, with "no electrodiagnostic evidence of [acute] or chronic radiculopathy."

Mr. Marquez consulted Dr. Campbell in conjunction with his disability application. In December of 2007, Mr. Marquez told Dr. Campbell that he had foot, hip and gluteal pain, as well as depression and anxiety. Dr. Campbell reported that the examination was largely normal, with Mr. Marquez exhibiting: a full range of motion in his lumbar spine, hips, knees, and ankles; negative straight leg raise tests; full strength in his hips, knees and feet; and no obvious pain or distress while sitting. He did, however, have tenderness and muscle tension in his right gluteal, hamstring and greater trochanter, as well as extensive burn scars on the soles of both feet that caused large calluses and moderate tenderness on palpation. Dr. Campbell ultimately diagnosed Mr. Marquez as suffering from bilateral foot pain, right hip pain, and psychological factors including PTSD, anxiety and pain disorder. He limited Mr. Marquez to standing, walking, bending, stooping and squatting no more than 4 hours per day.

During Dr. Campbell's second evaluation in April 2010, Mr. Marquez complained of lower back pain radiating into his legs and foot pain shooting up into his legs. Although he was taking pain pills and somewhat more active, he said that he avoided long drives and housework because sitting for long periods and bending was painful. Dr. Campbell's found that: Mr. Marquez had an awkward gait that favored his right leg; his lumbar muscles had increased tension and tenderness to palpation, diminished sensation, and reduced range of motion; a straight leg raising test on the right was positive for radicular pain; his foot burns were painfully hypersensitive but also had diminished sensation; there was tenderness in Mr. Marquez's right greater trochanter and lateral aspect of his right calf; and he had full strength in all extremities except for 4/5 strength in the left knee and in dorsiflexion of the left foot. Dr. Campbell found that Mr. Marquez had right hip and lower extremity pain and weakness consistent with L5-S1 radiculopathy and a herniated L5-S1 disk. Mr. Marquez was limited to: standing and walking

less than 3 hours per day; bending, stooping and squatting less than 2 hours per day; lifting and carrying 20 pounds less than 2 hours per day and 10 pounds less than 4 hours per day; and frequent change of position when sitting for right leg radiculopathy.

Based on his review of the same medical records outlined above (i.e. those medical records Mr. Marquez first submitted to the Commissioner), Dr. Bristow, the state agency medical consultant, found that Mr. Marquez was able to: frequently lift 10 pounds and occasionally lift 20 pounds; stand and walk with normal breaks for 2 hours in a day; sit with normal breaks for 6 hours per day; unlimited pushing and pulling of hand and foot controls; occasionally stooping, kneeling, crouching and climbing ramps and stairs; never climbing ladders, ropes or scaffolds; and avoidance of concentrated exposure to hazards like machinery or heights.

### B. Medical Records Submitted to the ALJ and the Appeals Council

Mr. Marquez submitted additional medical records to the ALJ (at the hearing) and to the Appeals Council. Covering the periods from June 2006 to August 2008, February 2010 to June 2011, and October 2011 to July 2012, these records include additional information regarding Mr. Marquez's physical impairments.

In May of 2008, Mr. Marquez consulted Dr. Leech for shooting pain and numbness in his feet as well as dryness and cracking related to his foot burns. In examination notes, Dr. Leech wrote that Mr. Marquez had scar tissue lesions on the medial portion of his right foot and the dorsum of his left foot, but he had normal reflex responses, gait, range of motion and strength. Dr. Leech diagnosed Mr. Marquez with plantar fasciitis.

In handwritten answers to questions posed by Mr. Marquez's attorney, Dr. Offut, Mr. Marquez's podiatrist, wrote that Mr. Marquez was limited to: standing up to 2 hours in a day; walking up to 30 minutes at a time without a need for change in position; walking a total of 1

hour in a day; and never using his feet for pushing activities. In treatment notes from January 2011, Dr. Offut wrote that Mr. Marquez had knee to ankle neuropathy and media dorsal cutaway nerve trauma.

In February and March of 2010, Mr. Marquez told Dr. Celada that he had mild pain partially relieved by medication. At a May 2010 examination, Mr. Marquez reported pain in the lumbar area and radiating to his abdomen and testicle. During an August 2010 examination, Dr. Celada noted that Mr. Marquez had pain in both sacroiliac joints but no radiculopathy. He gave Mr. Marquez a cortisone injection in the right sacroiliac joint. Mr. Marquez had similar symptoms during a September 2010 examination and received an injection in his left sacroiliac joint. By November of 2010, Mr. Marquez's symptoms had increased, and he complained of radiating and shooting pain on his right side. Dr. Celada found that examination findings were consistent with radiculopathy.

In a January 2011 Functional Report, Dr. Celada wrote that Mr. Marquez was unable to sit, stand or walk more than a few minutes without changing position; could only sit, stand or walk for 1 hour each day; could lift more than 10 pounds occasionally; could climb stairs or ladders; and bend more than occasionally. He also wrote that Mr. Marquez must rest for 15 minutes periodically during the day and had a pain level of 8/10, based on his observations and examinations. During two examinations in May of 2011, Mr. Marquez continued to complain of moderate back and foot pain, but Dr. Celada found no clear radiculopathy or radiation.

A November 2011 MRI of Mr. Marquez's lumbar spine showed little to no change from the November 2009 MRI.

In January of 2012, Ms. Uran wrote in a treatment note that Mr. Marquez had peripheral neuropathy in both feet, although she subsequently expressed an opinion that Mr. Marquez was

not disabled.  One month later, Dr. Coon, a neurosurgeon, examined Mr. Marquez and made the following findings: negative straight leg raise tests; no lower extremity weakness; some subjective decreased sensation in both feet; reduced reflexes in both ankles and knees; chronic low back, buttock and hip pain; and no obvious radiculopathy and no significant canal stenosis.

Mr. Marquez saw a physical therapist, Ms. Maes, in March of 2012.  During her examination, Mr. Marquez had hip and lumbar spine pain of 2-3 out of 10, increasing to 6 or 7 after weight bearing of more than 10 minutes.  He also had limited right hip flexion but his lumbar spine flexion was within functional limitations.  According to March 2012 x-rays, Mr. Marquez had degenerative arthritis and moderate tibial spurring in his left ankle, as well as a mild dysplastic bone in his hip, causing femoral acetabular impingement.  A concurrent physical examination showed normal ankle, plantar and dorsiflexion strength.

Although an April 2012 EMG study by Dr. Scott showed mildly decreased peroneal motor amplitudes (a change from Mr. Marquez's January 2010 EMG results), Dr. Scott concluded that "there is no electrodiagnostic evidence of an acute, subacute or chronic right lumbosacral radiculopathy."  Mr. Browning, a physician's assistant, examined Mr. Marquez for hip pain in April 2012.  According to the examination results, Mr. Marquez had limited range of motion in his right hip which, combined with radicular symptoms into his right calf, indicated a positive straight leg raise.  Based on an MRI that showed a very large bulging disk at L4-L5, Mr. Browning reported that Mr. Marquez's pain was related to his lumbar spine.  After a May 2012 examination, Dr. Vornado stated similar conclusions, finding that Mr. Marquez had a bulging L4-L5 disk that resulted in pain, tenderness and limited range of motion in his lumbar spine.  He also found that Mr. Marquez had numbness in his feet.

### III.   Issues Presented

Mr. Marquez raises five challenges to the Commissioner's Decision: (1) the ALJ failed to obtain medical expert testimony on the issue of medical equivalence to the Listings and the severity of Mr. Marquez's physical and mental impairments, as required by SSR 96-6p; (2) the Appeals Council failed to find that Mr. Marquez was in a borderline age category and thus disabled pursuant to Medical Vocational Disability Rule 201.14; (3) the ALJ's finding at Step 5 that a significant number of jobs existed in the local and national economy was not supported by substantial evidence; (4) the ALJ failed to analyze the medical expert opinions according to the correct standards; and (5) the ALJ's findings regarding credibility are not based on substantial evidence.  Because reversal and remand is required for further proceedings at Step 3 and the result may affect the ALJ's findings at subsequent steps, it is not necessary to address the other challenges.

### IV.   Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); 42 U.S.C. § 405(g).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency."  *Branum v. Barnhart*, 385 f.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

An impairment is medically equivalent to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 1526(a). If a claimant has an impairment that is described in the Listings and the claimant exhibits all of the criteria specified in that Listing, but one or more of the findings is not as severe as specified in the particular Listing, the claimant's impairment is medically equivalent to that Listing if the claimant has other findings related to his or her impairment that are at least of equal medical significance to the required criteria. *Avery v. Astrue*, 313 Fed.Appx. 114, 122 (10th Cir. 2009) (citing 20 C.F.R. § 404.1526). Similarly, if a claimant has a combination of impairments, none of which individually meet a Listing, the claimant's impairments are compared with closely analogous listed impairments and if the claimant's impairments are at least of equal medical significance to those of a listed impairment, the combination of impairments is medically equivalent to a Listing. *Id*.

The ALJ is required at Step 3 to discuss the evidence and explain why a claimant does not meet a listed impairment. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Although the ALJ does not have to discuss every piece of evidence, in addition to discussing the evidence supporting his or her decision, the ALJ also must discuss the uncontroverted evidence he or she chooses not to rely upon, as well as significantly probative evidence he or she rejects. *Id*. at 1010. Meaningful review of the Commissioner's Decision requires adequate development of the administrative record and explanation of findings. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005). However, "[h]armless error analysis 'may be appropriate to supply a missing dispositive finding … where, based on material the ALJ did at least consider (just not properly), we [the court] could confidently say that no reasonable administrative fact finder, following the

correct analysis, could have resolved the factual matter in any other way.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

**V.    Discussion**

The Court first addresses Mr. Marquez's challenge to the ALJ's finding at Step 3. The decision states: "[Mr. Marquez] does not meet or medically equal the criteria of [L]isting 1.04, Disorders of the Spine, because there is no evidence that his spine disorder has resulted in a compromised nerve root, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. (1.04(A), (B), (C))." The Decision contains no further discussion of Mr. Marquez's physical impairments relative to Step 3.

Mr. Marquez disputes the ALJ's Step 3 findings and argues that the combination of his physical impairments met or medically equaled several Listings, including 1.04 (disorders of the spine), 1.08 (soft tissue injuries including burns) and 8.08 (burns).[2]

The Court begins with Listing 1.04. In order to meet Listing 1.04, a claimant must establish one of three conditions: (A) nerve root compression, (B) spinal arachnoiditis, or (C) lumbar spinal stenosis resulting in pseudoclaudication. 20 C.F.R. Part 404, Subpt. P, Appx. 1. Most pertinent to this case is (A) nerve root compression, which according to the Listing is evidenced by "neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

The record contains evidence pertinent to nerve root compression. For example:

---

[2] Mr. Marquez also argues that, considering the evidence submitted to the ALJ and the Appeals Council, the ALJ should have obtained an updated equivalency opinion pursuant to SSR 96-6p.

11

    (1) The 2009 and 2011 MRI's are interpreted as showing nerve root compression and entrapment;

    (2) Dr. Campbell, Dr. Celada, Dr. Offut, Ms. Uran and Mr. Browning found that Mr. Marquez experienced radiculopathy or neuropathy in his lower extremities;

    (3) Dr. Campbell and Dr. Vornado's observed reduced range of motion in Mr. Marquez' lumbar spine

    (4) Dr. Campbell observed lower extremity pain and weakness, reduced reflexes in Mr. Marquez' patellar and Achilles tendons, diminished sensation in his feet and back, and some knee and foot weakness;

    (5) Dr. Stephenson, Dr. Coon and Dr. Vornado's treatment notes reflect observations of numbness or reduced sensation in Mr. Marquez's legs or feet, and Dr. Stephenson and Dr. Coon also observed reduced reflexes in Mr. Marquez's knees and ankles;

    (6) Both Dr. Campbell and Mr. Browning wrote in their treatment notes that Mr. Marquez had positive right straight leg tests.

Although elsewhere in the Decision, the ALJ discusses some of this evidence, there is no mention of evidence from Dr. Celada, Dr. Offut, Ms. Uran, Mr. Browning, Dr. Stephenson, Dr. Coon or Dr. Vornado.[3] In addition, there is no discussion of this evidence relative to Listing 1.04. Because not all of the medical evidence is consistent[4], it is important to know what

---

[3] In the Decision, the ALJ based the physical RFC on the following evidence:
    (1) The November 2009 lumbar spine MRI;
    (2) Dr. Celada's December 2009 notes in which he diagnosed Mr. Marquez with low back pain and radiculopathy, but also explained that the November 2009 MRI did not necessarily correlate with Mr. Marquez's symptoms;
    (3) Dr. Campbell's April 2010 examination report that diagnosed Mr. Marquez with right hip and lower extremity pain and weakness (consistent with L5-S1 radiculopathy and a herniated L5-S1 disk) and bilateral paint and hypersensitivity in his feet and lower legs;
    (4) The January 2010 EMG that was essentially normal with no radiculopathy;
    (5) Dr. Celada's January 2010 notes in which Mr. Marquez stated that he increased his pain medication but was still able to function and exercise;
    (6) September 2010 injections for chronic pain and sacroillitis;
    (7) Dr. Bristow's opinion.

[4] There is evidence in the record that arguably is inconsistent with these findings (e.g. the EMG tests and parts of Dr. Coon and Dr. Celada's medical reports), and other evidence that both supports and undermines such a finding (e.g Dr. Campbell's examination report).

evidence the ALJ credited, did not credit and why. Without such explanation, the Court cannot determine whether the ALJ applied the appropriate legal framework or whether the conclusion is supported by substantial evidence. *Clifton* at 1009; *Fischer-Ross* at 734. In the absence of adequate explication, the Commissioner of Social Security's decision is **REVERSED** and **REMANDED.** The Clerk shall enter a Judgment in accordance herewith.

DATED this 23rd day of January, 2014.

**BY THE COURT:**

Marcia S. Krieger
United States District Judge